Dean **HALES** et al., Plaintiffs,

v.

**GREEN COLONIAL, INC.,** et al.,
Defendants.

No. 1625.

United States District Court,
W. D. Missouri,
St. Joseph Division.

Oct. 24, 1975.

Michael E. Waldeck, Kansas City, Mo., for plaintiffs.

Joseph K. Houts, St. Joseph, Mo., for Green Colonial.

James Borthwick, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for Iowa Plumbers.

Dan Hale, St. Joseph, Mo., for Dover Corp.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

This diversity case raises the question, not heretofore decided by Missouri courts, of whether and under what circumstances a supplier and distributor who have been held strictly liable in tort for selling a defective product may seek indemnity from the manufacturer of the product. For the reasons which we shall state, we find and conclude that the supplier and distributor in this case are entitled to indemnity from the manufacturer.

In June of 1970 plaintiff Dean Hales contacted a plumbing and heating specialist about installing a heating unit in his retail store. The plumber, Harold Munroe, ordered two Peerless LP gas (Propane) heating units from Green Colonial, Inc., which in turn placed an order for the units with its distributor, Iowa Plumbers Supply, Inc., (IPS). IPS supplied one Peerless 150,000 BTU propane heater and one Peerless 300,000 BTU natural gas heater, which were installed by Munroe. The Peerless heaters were designed and manufactured by Dover Corporation.

In October of 1970 Munroe modified the 300,000 BTU unit so that it could be used with LP gas by using a conversion kit provided by Dover. Thereafter, when the heating units were placed in operation, plaintiffs noticed popping and exploding noises coming from the larger heating unit. Finally, on December 18, 1970 the 300,000 BTU unit caused a fire which completely destroyed plaintiffs' store.

Plaintiffs instituted an action against Dover, IPS and Green Colonial on July 19, 1971. Dover asserted a third-party claim for indemnity against Munroe. In February of 1972, IPS and Green Colonial notified Dover that unless it took over the defense of the case, they would assert cross-claims for indemnity. Dover declined to take over the complete defense, whereupon IPS and Green Colonial asserted cross-claims. At the close of all the evidence, the late Judge Duncan granted a motion for directed verdict in favor of third party defendant Munroe, and dismissed the cross-claims of IPS and Green Colonial. The case was submitted to the jury solely on the issue of strict liability in tort for dangerously defective products. The jury returned a verdict against all defendants in the amount of $102,594.00. After trial, the Court set aside the dismissal of the cross-claims and reserved ruling thereon. On appeal, the Eighth Circuit Court of Appeals affirmed, but declined to rule on the cross-claims because the district court had not considered them. *Hales v. Green Colonial*, 490 F.2d 1015, 1017 n. 3 (8th Cir. 1974). IPS and Green Colonial have now filed motions for summary judgment on the cross-claims.

## INDEMNITY IN MISSOURI

The cross-claims of IPS and Green Colonial are predicated on a theory of indemnity. Indemnity shifts the entire liability from one tortfeasor who has been compelled to pay damages to another joint tortfeasor who should bear it. W. Prosser, *Handbook of the Law of Torts*, § 51 at 310 (4th Ed. 1971). The right of indemnity may arise by means of a contractual agreement or by operation of law. Non-contractual indemnity is allowed in Missouri only if the joint tortfeasors are not *in pari delicto*. *Barb*

v. *Farmers Insurance Exchange*, 281 S.
W.2d 297, 304 (Mo.1955).

■■ In negligence cases one who is
secondarily liable will be entitled to in-
demnification from the party primarily
liable. Secondary liability may arise out
of a legal relation with the one primari-
ly liable, some common law or statutory
rule imposing liability, or the failure of
the one secondarily liable to discover or
correct a dangerous condition. See
*Crouch v. Tourtelot*, 350 S.W.2d 799, 805
(Mo.1961); *State ex rel. Siegel v. Mc-
Laughlin*, 315 S.W.2d 499, 507 (Mo.
App.1958); Comment, *Procedure—
Third Party Practice—Non-Contractual
Indemnification*, 28 Mo.L.Rev. 307, 309
(1963). In the latter situation, indem-
nity has been allowed against a manu-
facturer and in favor of an employer
who negligently failed to discover a de-
fect and became liable to an employee
injured by the defective product. *Busch
& Latte Paint Co. v. Woermann Const.
Co.*, 310 Mo. 419, 276 S.W. 614 (1925).
Similarly, Missouri has upheld the right
of a retailer and distributor to assert a
cross-claim for indemnity against the
manufacturer of an allegedly defective
product where all three were joined as
defendants in an action by a consumer
based on negligence. *Woods v. Juvenile
Shoe Corp.*, 361 S.W.2d 694 (Mo.1962).
See also *Feinstein v. Edward Livingston
& Sons, Inc.*, 457 S.W.2d 789 (Mo.1970).

This case, as we have stated, presents
a question of indemnity not heretofore
considered by Missouri courts. Here in-
demnity is sought where plaintiffs'
right to recovery was based solely upon
strict liability in tort. Although no
Missouri case has considered the ques-
tion of whether a distributor and sup-
plier found strictly liable in tort for sell-
ing a defective product has a cause of
action against the manufacturer for
indemnity,[1] at least one Missouri court
has sustained a cross-claim for indemni-
ty in a products liability action involv-
ing a strict liability claim. In *Sisco v.
Nu Process Brake Engineers, Inc.*, 462
S.W.2d 658 (Mo.1971), the Supreme
Court of Missouri reversed a trial court
determination dismissing a cross-claim
asserted by the installer of a power
brake system against the manufacturer,
both of whom were joined as defendants
in an action alleging that the power
brake was defective.

On these facts, it cannot be said
that Nu Process can have no right of
recovery over against Power Brakes
for any recovery which plaintiffs
might have against Nu Process. We
deem it unnecessary to categorize the
legal basis of plaintiffs' claims. Al-
though they appear to be couched pri-
marily in terms of implied warran-
ty, the petition also alleges matters
which might form the basis for recov-
ery on strict liability in tort, or negli-

---

1. Probably, the most closely analogous case
in Missouri is *Safeway Stores, Inc. v. L. D.
Schreiber Cheese Co.*, 326 F.Supp. 504 (W.
D.Mo.1971). In that case Judge Hunter
found that a wholesaler of adulterated
cheese was entitled to indemnification from
the processor for all amounts paid by the
wholesaler in satisfaction of consumer
claims. Although the holding was based on
breach of implied and express warranties,
Judge Hunter mentioned another reason to
support indemnification:

There exists another possible alternative
ground upon which Schreiber might be en-
titled to recovery against Standard by way
of indemnification. The courts of Mis-
souri have expressly adopted the strict
liability concept of Restatement § 402A.
See: *Williams v. Ford Motor Co.*, 454 S.

W.2d 611 (Mo.Ct.App.1970); *Keener v.
Dayton Electric Manufacturing Co.*, 445
S.W.2d 362 (Mo.1969); and *Williams v.
Ford Motor Co.*, 411 S.W.2d 443 (Mo.Ct.
App.1966). It has been urged that the
manufacturer's indemnification of the re-
tailer or the distributor for claims arising
from defective products is a logical corol-
lary of strict liability to the consumer.
See: 3 Frumer and Friedman, *Products
Liability*, § 44.02[3] (1970 ed.); 2
*Uniform Commercial Code* § 2–715:40
(1971 ed.) (liability based on implied war-
ranty). This would closely follow the ear-
lier Missouri cases involving indemnifica-
tion of the retailer where a manufactur-
er's negligence could be shown. [Id. at
510–11, n. 18]

gence. The exact basis of recovery would have to await the outcome of the trial of plaintiffs' claims. However, the facts alleged do not show that, in no event, would Nu Process have a right of indemnity against Power Brakes in the event of a verdict against the defendants jointly. [Id. at 660–61]

■ Other courts that have faced the question of indemnity in products liability actions based on strict liability under Section 402A of the Restatement of Torts have recognized the right of persons down the distributive chain to shift the loss back to the manufacturer. See *Farr v. Armstrong Rubber Co.*, 288 Minn. 83, 179 N.W.2d 64 (1970); *Hawkeye-Security Insurance Co. v. Ford Motor Co.*, 174 N.W.2d 672 (Iowa 1970); *Newark v. Gimbels, Inc.*, 54 N.J. 585 258 A.2d 697 (1969), and *Texaco, Inc. v. McGrew Lumber Co.*, 117 Ill.App.2d 351, 254 N.E.2d 584 (1969). The proposed Restatement rule would also allow indemnification of a supplier and retailer who failed to discover the defect:

(1) If two persons are liable in tort to a third person for the same harm, and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be

unjustly enriched at his expense by the discharge of the liability.

(2) Instances in which indemnity is granted under this principle include the following:

(d) The indemnitor supplied a defective chattel, or performed defective work upon land or buildings, as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect; . . . .

[Restatement of Torts (Second) § 886B

(Tentative Draft No. 18, April 26, 1972)][2]

We find and conclude that the weight of authority generally supports a cause of action for indemnity against the manufacturer of a defective product which has been found to be unreasonably dangerous where the seller seeking indemnity has no actual knowledge of the defect.[3]

### INDEMNITY APPLIED

■ Once it is established that a cause of action for indemnity will lie against a manufacturer of a defective product, the Court must then determine whether the distributor and supplier are entitled to indemnification on the facts

2. The comment to subsection (d) provides as follows:

(g) The supplier of a defective chattel is required to indemnify a retailer regardless of whether his tort liability is based on negligence or on strict liability, so long as the retailer has failed to discover the defect before selling the product. If he has discovered the defect and sold the product anyway, he is not entitled to indemnity.

3. Dover argues that allowing indemnity against the manufacturer will not provide the deterrence sought through strict liability because the wholesaler and retailer will have nothing to lose by selling a defective product. We recognize the force of this argument. See Jensvold, *A Modern Approach to Loss Allocation Among Tortfeasors in Products Liability Cases*, 58 Minn.L.Rev. 723, 738–39 (1974). Furthermore, it may be that a more equitable loss allocation would

result from an apportionment of damages according to the amount of profit obtained on the product by each tortfeasor in the distributive chain.

This Court, however, does not write on a clean slate when it comes to questions of policy underlying the concept of indemnity. We are bound to apply the law of Missouri, and we must look to the relevant Missouri precedents in determining what law the Missouri courts would likely apply. Defendants' deterrence argument, of course, ignores the fact that it is the manufacturer who places the defective product in the stream of commerce. Shifting the entire loss on the manufacturer through the concept of indemnification could be said to promote the design and manufacture of safe products. We do not, as we have said, reach those policy questions because we are required to apply the law which the Missouri courts have indicated they would apply.

of the case. Accordingly, we must determine whether IPS and Green Colonial had actual knowledge of the defect in the Peerless heater prior to the sale to plaintiff Hales. Mere negligence in failing to discover this defect will not prevent them from recovering in indemnity against Dover. Dover states that all the relevant facts have been adduced at trial and the question of recovery for indemnity is one for the Court on the undisputed record. We agree and proceed to an examination of the trial testimony.

Plaintiffs' expert testified that the 300,000 BTU heating unit was defective for two reasons. First, the unit lacked a flame tube which would ignite all the burners at the same time. Second, the air shutter bar was defectively designed in that it made an even distribution of the gas and air mixture impossible. The Eighth Circuit Court of Appeals discounted the testimony of plaintiffs' expert on the second reason as insufficient to sustain the verdict, but it concluded that the absence of a flame tube was sufficient evidence for the jury to infer that the unit was defective. 490 F.2d at 1018–19.

The evidence at trial failed to establish any actual knowledge of either defect on the part of IPS or Green Colonial.[4] Dover contends that IPS and Green Colonial were actively at fault because they participated in "making the danger effective as to the plaintiffs," and therefore they are not entitled to indemnity. Dover emphasizes the role played by IPS and Green Colonial in furnishing a natural gas heater rather than one designed for LP gas, and the failure of IPS and Green Colonial to advise plaintiffs against using the larger heater once it became apparent that it was not working properly. This argument is wide of the mark for a number of reasons.

First, the defect in the heater did not stem from the installation of a natural gas heater and the subsequent conversion for LP gas. Indeed, in order to return a verdict for plaintiffs, the jury had to find that the heater, as converted, was in substantially the same condition as when manufactured. *Keener v. Dayton Electric Mfg.*, 445 S.W.2d 362 (Mo.1969).[5] Second, IPS and Green Colonial can only be charged with "mak-

4. Green Colonial's service manager testified as follows:
   Q. All right, so the only knowledge you have of how you operate these units—or you have no knowledge of that other than just that they go across your dock?
   A. No, that's true. [Tr. 604]
   The vice-president and sales manager of Green Colonial stated the following in his deposition which was admitted in evidence at trial:
   We are a manufacturer of gas appliances here, also. We take our equipment through various safety testing laboratories, such as the A.G.A. and so forth. We know the particulars in our equipment. We do not know anything about what problems possibly the other manufacturer may have. [Tr. 647]

5. The Court instructed the jury as follows:
   Third, that the defendant Dover supplied the parts designed to convert the natural gas heater to a propane gas heater, and if you further find that when such parts were properly installed to convert the natural gas heater to a propane gas heater said heater as converted was in substantially the

same condition as it would have been if originally sold by defendant Dover for use with propane gas, and . . . then your verdict would be for the plaintiffs and against the defendants.
   In February of 1970, after the heater had been installed, that is it had been connected with the wall and suspended, the installer plumber ordered the kit to convert it from natural gas to artificial gas. Now, at that time it had not been used, so he converted it to the gas.
   The question in this case, after the conversion from natural gas to artificial gas, was it in substantially the same condition as it would have been had it been, say, manufactured as an artificial gas heater.
   So we are considering it as a unit. Now, we are considering it as having been converted, and the charge in this case is by the plaintiffs that it was defectively manufactured, defectively designed and defectively manufactured, and that that was a condition that existed at the time of the conversion.
   So it is for you to determine whether or not it was defectively designed and defectively manufactured, and we are tying the

ing the danger effective" by reason of their position in the distributive chain. Active fault would necessarily require actual knowledge of the defects. Third, the complaints made by plaintiffs to IPS and Green Colonial after the sale did not impose on them a duty to recall the larger heater or advise plaintiffs not to use it. Although IPS and Green Colonial may have had knowledge that the larger heater was not working properly, they did not have knowledge of the defects alleged and found in this case. Therefore, we find and conclude that IPS and Green Colonial are entitled to indemnity from Dover.

## EXTENT OF LIABILITY

■■ In addition to seeking indemnification for their portion of judgment, IPS and Green Colonial request attorneys' fees and costs incurred in defending against the plaintiffs' claim. In Missouri attorneys' fees and costs may be recovered if the party entitled to indemnity has given the indemnitor notice of the action and opportunity to conduct the defense. *Ward v. City National Bank & Trust Co.*, 379 S.W.2d 614, 620–

21 (Mo.1964); *State ex rel. Algiere v. Russell*, 359 Mo. 80, 223 S.W.2d 481, 483 (1949); *Hunter v. Deluxe Drive-In Theatres*, 257 S.W.2d 255, 260–61 (Mo.App. 1953). In the instant action it is undisputed that both IPS and Green Colonial requested Dover to take over the defense, but Dover declined to do so. We find and conclude that IPS and Green Colonial are entitled to indemnification for the portion of the judgment which they paid and for the attorneys' fees and costs reasonably incurred in their defense against plaintiffs' claims.[6] Of course, attorneys' fees and expenses incurred in prosecuting the cross-claims at issue here will not be awarded. See *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 491 F.2d 192, 198, n. 9 (8th Cir. 1974).

For the reasons stated, it is

Ordered (1) that the motions of Iowa Plumbers Supply and Green Colonial for summary judgment on their cross-claims against Dover should be and the same are hereby granted. It is further

Ordered (2) that the parties shall submit an agreed form of final judgment

---

two together now as it originally came and as it was converted from the natural to the artificial gas burner.

The defendants, on the contrary, contend that it was not defectively designed or manufactured, and you are instructed in that connection, if you find and believe from the evidence that there was nothing defective about the design or the manufacture of the natural gas heater as manufactured by the defendant Dover or the parts for the conversion thereof from natural gas to propane and that there was nothing defective about the heater from the standpoint of manufacture or design after the parts for the conversion of the heater had been put thereon, and you find that the malfunction of the heater, if any, was due solely to deficiencies in the installation or to have the right pressure for propane gas or failure to properly follow the instructions as to installation and operation of the heater, then your verdict in this case will be in favor of all of the defendants against the plaintiffs. [Tr. 973–76]

6. Dover contends that they should not be required to indemnify IPS and Green Colonial attorneys' fees and expenses incurred because IPS and Green Colonial "were charged with primary acts of wrongdoing." Presumably, Dover refers to Count II of the fourth amended complaint which alleged negligence on the part of IPS and Green Colonial. Dover relies on *Krug v. Sterling Drugs, Inc.*, 416 S.W.2d 143 (Mo.1967), in which the Missouri Supreme Court denied a cross-claim for attorneys' fees by a druggist charged along with a manufacturer for negligently selling a harmful drug without proper warning. We find this argument without merit.

Count II of the fourth amended complaint basically alleges negligence on the part of Green Colonial and IPS in failing to discover the defect in the heater and warn plaintiffs. Negligent failure to discover the defect does not bar indemnity. *Restatement of Torts*, § 886B, *supra*. Moreover, Dover's reliance on *Krug* is misplaced because in that case the court directed a verdict for the druggist thus absolving him of any joint liability and making principles of indemnity inapplicable. 416 S.W.2d at 155.

within ten (10) days of the date of this order. Attorneys' fees and expenses paid and incurred in connection with the prosecution of the cross-claims shall not be included in the judgment. It is further

Ordered (3) that if the parties are not able to agree upon the specific amounts of attorneys' fees and expenses, they shall so advise the Court and further proceedings will be directed to resolve any factual dispute which may exist under the circumstances. We do not anticipate that the parties will be unable to reach agreement in regard to these matters. Dover's agreement in regard to the reasonableness of attorneys' fees and expenses shall not, of course, be considered as a waiver of Dover's legal contention that no attorneys' fees or expenses should be included in the final judgment.