Cornelius MALONE, et al.,
Plaintiffs/Appellants,

v.

SCHAPUN, INC. d/b/a O'Fallon True Value Hardware, et al., Defendants/Respondents.

No. 71949.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 21, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 8, 1998.

Case Transferred to Supreme Court Feb. 24, 1998.

Case Retransferred to Court of Appeals May 26, 1998.

Original Opinion Reinstated June 1, 1998.

Richard B. Blanke, Charles W. Bobinette, St. Louis, for plaintiffs/appellants.

Bryan M. Groh, Frans J. von Kaenel, St. Louis, for defendants/respondents.

RHODES RUSSELL, Judge.

Plaintiffs, Cornelius and Norma Malone, appeal from the dismissal of their strict liability claims against Schapun, Inc., d/b/a O'Fallon True Value Hardware ("retailer"), and from a summary judgment on their negligence claims against retailer and its two owners/managers. We reverse and remand the trial court's dismissal of the product liability claims in that there was no defendant properly before the court from whom total recovery could have been had as required by section 537.762 RSMo 1994.[1] We affirm the trial court's grant of summary judgment on the negligent failure to warn claims, in that there was no evidence that defendants knew or had reason to know that the tarp strap was dangerous.[2]

On August 17, 1988, Cornelius Malone purchased a rubber tarp strap from retailer. Malone later attempted to use the tarp strap to secure a load of salvage to a truck. While securing the load, Malone stretched the tarp strap, at which time it broke and struck him in the eye, face, and head. As a result, Malone incurred personal injuries including total loss of vision in his left eye.

The Malones filed suit for personal injuries and loss of consortium in the Circuit Court of the City of St. Louis on February 26, 1993. Defendants were retailer and Cotter & Company ("supplier"), who was alleged to have sold and supplied the tarp strap to retailer. During discovery, it was revealed that Donald Schappe and Fred Pund (collectively, "owners/managers") each owned fifty percent of retailer and that both men managed the True Value store. Owners/managers were added to a new petition after the Malones voluntarily dismissed their first petition and refiled it almost seven months later. Malone's new petition contained twelve counts sounding in strict products liability, negligence, and loss of consortium.

In the strict liability product defect claim against retailer, the Malones alleged that the tarp strap was sold by retailer in a defective condition, unreasonably dangerous when put to a reasonably anticipated use in one or more of the following respects:

(a) the elastic portion of the product was not safely joined or affixed to the metal "s-ring" at the ends of the product; (b) the elastic portion of the product was not properly designed or manufactured to endure a reasonably foreseeable amount of stress being placed upon it; (c) the metal "s-ring" at the ends of the product and/or the elastic portion of the product were not properly designed or manufactured to interact with each other to ensure the integrity of the entire product when put to a reason-

---

1. All citations are to the 1994 Revised Statutes of Missouri unless otherwise indicated.

2. Respondent's motion to file a supplemental legal file is granted.

ably anticipated use; (d) when the elastic portion of the product is stretched for tie-down, it is an inherently dangerous condition which may cause serious physical harm.

In the strict liability failure to warn claim against retailer, the Malones alleged that the tarp strap was unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics. It was further alleged that retailer failed to provide an adequate warning of the tarp strap's danger.

In their negligence claims against retailer and owners/managers, the Malones alleged that retailer negligently supplied the tarp strap. The petition also averred that owners/managers negligently selected and ordered the tarp strap and were on duty at the True Value store when Malone purchased the strap. The Malones further alleged that retailer and owners/managers knew or had information from which each of them, in the exercise of ordinary care, should have known of the dangerous condition of the strap, and that each of them were negligent in failing to warn Malone about the dangerous nature of the tarp strap he purchased.

Supplier filed a third party petition against N.A. Taylor Company, Inc. ("manufacturer") alleging that it manufactured and supplied the strap. In the third party petition, supplier denied that it sold the tarp strap to retailer, but in the event it was determined that supplier did, then the tarp strap was purchased by it from manufacturer. Supplier further stated that in the event it was held liable for Malone's injuries, then manufacturer should be held liable to it for indemnity or contribution because it only supplied the tarp strap as a seller in the stream of commerce and did not make any modifications to the tarp strap. In response, manufacturer denied that it was the manufacturer of the tarp strap.

Shortly after manufacturer became a third party defendant, retailer and owners/managers moved for summary judgment on the negligence counts against them and the corresponding loss of consortium claims. The trial court denied their motions for summary judgment "without prejudice" and granted them ten days to file supplemental briefs.

On December 20, 1996, the Malones struck from their petition all allegations that supplier sold or otherwise supplied the tarp strap and dismissed their cause of action against supplier without prejudice. Supplier, in turn, dismissed its third party petition against manufacturer without prejudice on the same date.

On December 20, 1996, the Malones entered into a partial settlement agreement with supplier and manufacturer, releasing these parties in exchange for a partial payment of the Malones' claims. Under the terms of the settlement agreement, the Malones received the sum of $300,000. Manufacturer contributed $100,000, and supplier contributed $200,000. The settlement agreement expressly reserved the Malones' right to proceed with their claims against retailer and owners/managers, "including but not limited to any claims under a theory of strict liability in tort." Supplier and manufacturer also acknowledged in the settlement agreement that if the Malones succeeded against retailer on a theory of strict liability, that retailer might have an indemnity claim against the actual suppliers of the tarp strap. In that event, supplier and manufacturer agreed that they would not raise section 537.060 as a defense to such an indemnity claim.

On January 3, 1997, retailer moved to dismiss the Malones' strict liability claims under section 537.762. Four days later, the trial court sustained retailer's motion to dismiss the Malones' strict liability claims. Retailer and owners/managers orally renewed their motion for partial summary judgment on Malones' negligence claims on January 10, 1997. The trial court granted their motion for summary judgment. This appeal follows.

In their first point, the Malones contend that the trial court erred in granting retailer's motion to dismiss their strict liability claims. The Malones maintain that no other defendant was "properly before the court from whom total recovery may have been had for their claim" because 1) they had settled with the other defendants who had consistently denied their status as upline suppliers of the tarp strap; 2) they had given

the settling defendants partial releases which expressly reserved the Malones' strict liability claims against retailer under the terms of the settlement agreement; 3) section 537.060 provides that retailer should not stand discharged as a result of the settlement with the other defendants; and, 4) the settlement agreement preserved retailer's potential claim of indemnity against the defendants. The Malones insist that neither supplier nor manufacturer were "properly before the court" when the trial court sustained retailer's motion to dismiss because those parties had been dismissed from the lawsuit less than a month before.

Section 537.762 provides that a defendant, whose liability is based solely on his status as a seller in the stream of commerce, may be dismissed from a product liability claim "if another defendant, including the manufacturer, is properly before the court and from whom total recovery may be had for plaintiff's claim." Section 537.762.3 states that a defendant may move for dismissal by filing a motion accompanied by an affidavit stating that "the defendant is aware of no facts or circumstances upon which a verdict might be reached against him, other than his status as a seller in the stream of commerce." Once another defendant is properly before the court from whom total recovery may be had, and the party moving for dismissal avers that he is merely a seller in the stream of commerce, the other party should come forward with evidence that the defendant seeking dismissal is liable on some basis other than his status as a seller in the stream of commerce. Section 537.762.5. Otherwise, the court shall dismiss without prejudice the claim as to that defendant. *Id.* However, the party moving for dismissal must meet the threshold requirements of subsections 2 and 3 before dismissal is granted. *Id.*

Section 537.762 has been described as the "innocent seller statute." *See,* Dennis J. Dobbels, *Missouri Products Liability Law Revisited: A Look at Missouri Strict Products Liability Law Before and After the Tort Reform Act,* 53 Mo.L.Rev. 227, 326 (1988). Other states have adopted "innocent seller"statutes, but none are substantially simi-lar to section 537.762. Some statutory schemes completely exempt a non-manufacturer of a product from strict product liability regardless whether the manufacturer is unavailable or insolvent. *See,* Neb.Rev.St. section 25–21, 181 (1985); S.D. Codified Laws Ann. Section 20–9–9 (1979). Other statutory schemes, however, only exempt the non-manufacturer seller from strict product liability if the manufacturer is subject to service of process within the state and is able to satisfy the plaintiff's judgment. *See,* ILL. ANN.STAT. Ch 110, para 2–621 (Smith–Hurd 1987); MINN.STAT.ANN. Section 544.41 (West 1990).

Many of the statutory schemes dealing with the liability of non-manufacturers are loosely patterned after the Model Uniform Product Liability Act (Model Act).[3] Frank J. Cavico, Jr., *The Strict Tort Liability of Retailers, Wholesalers, and Distributors of Defective Products,* 12 Nova.L.Rev. 213, 240–41 (1987). Section 105(A) of the Model Act provides that a non-manufacturer is subject to liability for its failure to use reasonable care with respect to a product. Section 105(B) also holds a non-manufacturer strictly liable for any express warranties given. Thus, under the Model Act, a non-manufacturer will not be held liable for a product liability claim unless it is somehow negligent with respect to the product or has made an express warranty about the product. However, a non-manufacturer seller will be held to the same standards as a manufacturer under section 105(c) if: 1) the manufacturer is not subject to service of process in the plaintiff's domicile; or 2) the manufacturer has been declared insolvent; or 3) the court determines it is highly probable that the plaintiff would not be able to enforce a judgment against the manufacturer.

Section 105 attempts to achieve a balance between protecting non-manufacturers, except from their own negligence or specific guarantees, and protecting an innocent consumer's right to recover. Cavico, *supra,* at 236. Although the Model Act recognizes that the manufacturer should be ultimately held liable for its defective product, section 105(c)

---

**3.** 44 Fed.Reg. 62714–50 (1979).

also recognizes that "[i]n some cases the retailer may be the only member of that enterprise reasonably available to the injured plaintiff." *Id.,* (quoting *Vandermark v. Ford Motor Co.,* 61 Cal.2d 256, 37 Cal.Rptr. 896, 899–900, 391 P.2d 168, 171–72 (1964)). Section 105(c) ensures that the negligence standard will protect the non-manufacturer if the manufacturer is available and solvent. Cavico, *supra,* at 236.

Although section 537.762 does not use the terminology of the Model Act or other state statutes, it does address similar concerns. First, like the Model Act, a seller is still liable for its own negligence or other conduct other than its status as a seller in the stream of commerce. Under section 537.762, dismissal is only proper where the defendant's liability is based solely on its status as a seller in the stream of commerce. Further, a defendant who is a mere seller in the stream of commerce may not be dismissed unless "another defendant, including the manufacturer, is properly before the court and from whom total recovery may be had for plaintiff's claim." Section 537.762.2. As with the Model Act, section 537.762 addresses both the availability and solvency of the manufacturer of the defective product. Although one of the apparent purposes of section 537.762 is to protect a seller from becoming principally liable when there is a culpable manufacturer or other culpable up-line supplier, the statutory requirement that there must be another defendant properly before the court and from whom total recovery may be had, ensures that the plaintiff will not be prejudiced by the dismissal. An innocent seller under section 537.762 should not be dismissed unless the injured party is ensured that another defendant, who is not an innocent seller, is properly before the court and can satisfy the injured party's claim. Thus, similar to the Model Act, dismissal of a non-manufacturer (i.e., seller in the stream of commerce) should not be granted where the product manufacturer is not subject to process under Missouri law or is insolvent. Nicolas P. Terry, *Retreat and Reaction: An Analysis of the Tort Reform Act,* 56 UMKC L REV 205, 211 (1988).

Section 537.762, by its very terms, does not change the substantive law relating to an innocent seller's liability; as its effect is only procedural. Dobbles, *supra,* at 238; *see also, Pruett v. Goldline Laboratories, Inc.,* 751 F.Supp. 1372, 1372 (W.D.Mo.1990). A seller in the stream of commerce is still subject to liability under the doctrine of strict product liability. *See, Welkener v. Kirkwood Drug Store Co.,* 734 S.W.2d 233, 241 (Mo.App.1987). The purported purpose of section 537.762 is to allow a seller in the stream of commerce "to be released at an early stage of the litigation, rather than wait until the completion of litigation to obtain indemnity." Dobbels, *supra,* at 238.

Retailer argues that manufacturer and supplier "were properly before the court" on January 7, 1997, because the court retained jurisdiction over these parties after their voluntary dismissal from the suit under Rule 75.01. Pursuant to Rule 75.01, the trial court has power to vacate, reopen, correct, amend or modify a judgment during the 30 days immediately following entry of the judgment. Retailer contends that the trial court exercised its jurisdiction over manufacturer and supplier when the court sustained their motion to disclose the settlement terms on January 7, 1997. We disagree.

Rule 75.01 provides that the trial court retains control over judgments during the 30–day period after entry of judgment. However, a voluntary dismissal under Rule 67.01 is not a judgment of the court within the meaning of Rule 75.01. *Emigh Engineering Co. v. Rickhoff,* 605 S.W.2d 173, 174 (Mo.App.1980). Once a plaintiff voluntarily dismisses a claim prior to the introduction of evidence, it is as if the suit were never brought. *Liberman v. Liberman,* 844 S.W.2d 79, 80 (Mo.App.1992). No action can be taken by the trial court, and any action attempted in the dismissed suit is a nullity. Further, the trial court has no power to reinstate a voluntarily dismissed case. *Id.*

The claims against supplier and manufacturer had been voluntarily dismissed on December 20, 1996. After that date, the trial court was without jurisdiction as to matters relating to the dismissed suits against supplier and manufacturer. The trial court would

not have had the power to reinstate the causes of action against manufacturer and supplier. Furthermore, defendants mischaracterize the January 7, 1997 order in which the trial court ordered the terms of the settlement agreement to be disclosed. When the trial court ordered the terms of the settlement agreement to be disclosed, it was not exercising jurisdiction over the dismissed manufacturer or supplier. The motion to disclose the terms of the settlement agreement filed by retailer and owners/managers requested that the Malones be required to disclose the terms. Thus, the trial court exercised jurisdiction over the Malones and not manufacturer or supplier. We find retailer's argument that manufacturer and supplier were properly before the court because the trial court retained jurisdiction over them to be without merit.

■ Even if we were to assume *arguendo* that supplier and manufacturer were properly before the court when retailer was dismissed, it was disputed whether they were the actual supplier and manufacturer of the tarp strap in question. Throughout the entire course of the litigation, and concluding with the settlement, both supplier and manufacturer continued to deny that they manufactured, distributed, sold, or in any manner supplied the tarp strap which injured Malone. No admissions were made by supplier and manufacturer in the settlement agreement, and the fact that they settled with the Malones does not establish that they were the manufacturer and/or supplier of the tarp strap. *See generally, Taylor v. Associated Elec. Coop., Inc.*, 818 S.W.2d 669, 672 (Mo. App.1991); *Joice v. Missouri K.T. R. Co.*, 354 Mo. 439, 189 S.W.2d 568, 575 (1945). As there was a material issue of fact as to whether supplier and manufacturer were up-line suppliers of the tarp strap, and because there were no other defendants properly before the court, the trial court erred in dismissing retailer in that the requirements of section 537.762.2 were not met.[4]

Retailer argues that the Malones' settlement with supplier and manufacturer bars the Malones from pursuing their strict liability claims against retailer. Retailer contends section 537.762 recognizes that retailers of defective products are only secondarily liable to injured plaintiffs, and therefore, when a plaintiff settles with an upstream defendant, the settlement agreement serves to bar any subsequent strict liability action against the retailer. Retailer essentially argues that since its liability is secondary or derivative, the release of both supplier and manufacturer served to discharge their liability. We disagree.

■ Section 537.060 states that "[w]hen an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide ..." In *Manar v. Park Lane Medical Center*, 753 S.W.2d 310 (Mo.App.1988), the Western District of this court held that the release of medical malpractice claims against medical practitioners did not operate to release the plaintiff's derivative claims against the hospital. Basing its decision on section 537.060 and Judge Robertson's majority opinion in *Aherron v. St. John's Mercy Medical Center*, 713 S.W.2d 498 (Mo. banc 1986), the court stated that section 537.060 preserved claims of vicarious liability against tort-feasors not included in the partial release. *Id.* at 313–14.

We have not discovered any Missouri case which holds that when a plaintiff releases a manufacturer of a defective product, the retailer is also released. Other jurisdictions, however, have held that a release of the manufacturer does not release the retailer from the plaintiff's product liability claim. *See, Cartel Capital Corp. v. Fireco of New Jersey*, 81 N.J. 548, 410 A.2d 674 (1980). In *Spector v. K–Mart Corp.*, 99 A.D.2d 605, 471 N.Y.S.2d 711, 712 (3d Dept.1984), the court held that a release given to the manufacturer

---

4. Dobbels suggests that since section 537.762 does not establish a standard of proof permitting dismissal, a trial court should follow the summary judgment standard. Dobbels, *supra,* at

239. Thus, if there is a genuine issue of material fact regarding the requirements of section 537.762, the movant's motion should be denied.

of a prescription drug did not release the drug retailer where the release did not specifically designate that the drug retailer was also to be released. The New York court held that the drug retailer was not released because under section 15–108(a) GEN. OBLIG., a release given to one of two or more remaining tort-feasors, does not extend to the remaining tort-feasors unless its terms expressly so provide.

Here, the partial releases given to supplier and manufacturer provided:

> this partial release is given by the undersigned with the express understanding that the undersigned does not hearby release [retailer] and [owners/managers], but instead the undersigned expressly reserve the right to proceed and shall continue in their suit, action, claims, and causes of action, against [retailer] and [owners/managers], including but not limited to any claims under a theory of strict liability in tort.

Since the express terms of the release expressly reserved the Malones' cause of action against retailer, by operation of section 537.060, the release of supplier and manufacturer did not discharge retailer from liability.

We find that the trial court erred in dismissing retailer under section 537.762 in that there was no defendant properly before the court from whom total recovery may be had for the Malones' product liability claims. We reverse and remand this cause to the trial court for further proceedings.

In their second point, the Malones maintain the trial court erred in granting summary judgment in favor of retailer and owners/managers on the negligent failure to warn claims and the derivative loss of consortium claims. The Malones argue that there was a genuine issue of material fact of whether the defendants had reason to know that the tarp strap was likely to be dangerous for the use for which it was supplied. We disagree.

A summary judgment shall be entered if the motion and response both show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.1993). Once the movant has demonstrated that no genuine issue of material fact exists, the burden shifts to the non-movant to show that there is a genuine dispute as to the material facts supporting the movant's right to summary judgment. *Id.* at 381–82. A genuine issue exists if there is a dispute that is real, not merely argumentative, imaginary or frivolous. *Id.* at 382. Mere speculation and conjecture are not enough to create a genuine issue. *Id.* at 378.

Our review of the decision to grant summary judgment is essentially *de novo*. *Id.* at 382. We review the record in the light most favorable to the non-moving party and accord it all reasonable inferences from the record. *Id.*

The Malones' negligence claims against retailer and owners/managers are predicated upon the negligent failure to warn theory. Missouri courts recognize that a supplier has the duty to warn users of its products which are dangerous because of the use to which they are put. *Spuhl v. Shiley, Inc.*, 795 S.W.2d 573, 577 (Mo.App.1990). The Restatement (Second) of Torts section 388 provides that:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.[5]

5. This theory is contained in MAI 25.10(A) [1990 New] as "Negligently Supplying Dangerous In-

Section 388 has been adopted by this state. *See, Morris v. Shell Oil Co.*, 467 S.W.2d 39, 42 (Mo.1971). In order to state a cause of action under section 388, the plaintiff must satisfy all three subsections.

■ In their motion for summary judgment, retailer and owners/managers averred that "[a]t no time prior to the alleged accident, did any of these defendants have knowledge that the tarp straps that were sold at the O'Fallon True Value Hardware Store were defective or in a dangerous condition." In their affidavits to support the motion for summary judgment, owners/managers averred that they had no personal knowledge as to the dangerousness or the defective condition of the tarp strap nor did they know of any employee of retailer who had such knowledge. Further, owners/managers averred that retailer had never received any information or warnings regarding the danger or defective propensities of the tarp straps. Finally, retailer and owners/managers averred that there was absolutely no evidence that they knew or should have known that the tarp strap was defective or dangerous.

In response to the motion for summary judgment, the Malones generally denied that the defendants lacked knowledge that the tarp straps were dangerous. The Malones denied defendants' assertions that there was no evidence that they knew or should have known of the tarp strap's danger. The Malones contended that there was sufficient evidence to raise the inference that the defendants should have known of a defective or dangerous condition of the tarp strap. In opposition to defendants' motion for summary judgment, the Malones made reference to the deposition testimony of owners/managers. The deposition testimony of owners/managers revealed that: 1) owners/managers were responsible for ordering the stock for the hardware store; 2) owners/managers were on duty as store managers when the tarp strap was sold to Malone; and 3) the tarp straps would come in a plastic-hamper type box and owners/managers would take the straps out, price them, and place them on the shelves.

The Malones do not argue that defendants had actual knowledge of the tarp strap's alleged danger or defective design. Instead, the Malones argue that retailer and owners/managers had reason to know of the tarp strap's defect or its dangerous condition. According to Section 12(1) of the Restatement (Second) of Torts, the phrase "reason to know" means:

[T]hat the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists.

Verdict director MAI 25.10(A) paragraph five uses the phrase "had information from which defendant, in the exercise of ordinary care, should have known of such dangerous condition" as the equivalent of the phrase "had reason to know" as used in Restatement (Second) of Torts section 12. MAI 25.10(A), *Notes on Use Note 3.*

The Malones have not presented any evidence contradicting owners/managers' contentions that they had no actual knowledge of any defect in the tarp strap. Nor have the Malones adduced any evidence that retailer or owners/managers had reason to know the tarp strap was defective or dangerous. Although the Malones set forth evidence that owners/managers ordered, stocked, and priced the tarp straps sold at the hardware store, they failed to present any evidence that retailer or its owners/managers had any information from which they should have known of the tarp strap's dangerous condition.

The Malones also argue that a jury should have been allowed to determine whether owners/managers could have discovered the tarp strap's alleged defect since owners/managers unraveled, examined, and placed the straps on the shelves before selling them. We disagree.

■ A seller of a product, who neither knows or has reason to know that the product is dangerous, is not liable in a negligence

strumentality." *See, Mobley v. Webster Elec.*   *Coop.*, 859 S.W.2d 923, 930 (Mo.App.1993).

action for harm caused by the product's dangerous condition because of the seller's failure to discover the danger by an inspection or test of the product before selling it. Restatement (Second) of Torts, section 402 (1965); *See also, Welkener v. Kirkwood Drug Store Co.*, 734 S.W.2d 233, 241 (Mo.App. 1987); *Willey v. Fyrogas Co.*, 363 Mo. 406, 251 S.W.2d 635, 639 (1952). However, if the defect is such that a reasonably prudent seller should have discovered it before selling the product to the consumer, the seller may be held liable for the injuries caused by the defect. *Welkener*, 734 S.W.2d at 241.

In *Willey*, a widow sued the manufacturer, the assembler, and two retailers of a hot water heater which exploded and killed her husband. In discussing the propriety of a directed verdict in favor of one of the retailers, the Missouri Supreme Court stated that even if it assumed that the heater was defective while it was in the warehouse before seller sold it, and that the seller could have discovered the defect by a proper inspection, it was still essential to establish that the seller knew or had reason of the dangerous character of the heater. *Willey*, 251 S.W.2d at 639.

As in *Willey*, there is no evidence that retailer or owners/managers knew or had reason to know of the tarp strap's alleged dangerous condition. Further, the Malones have offered no evidence as to whether a reasonable inspection would have disclosed the tarp strap's alleged defect.

Since there were no summary judgment facts to support a finding that retailer nor owners/managers knew or should have known of the tarp strap's alleged defect or dangerousness, the trial court properly granted summary judgment for retailer and owners/managers on the Malones' negligent failure to warn claim. Point two is denied.

CRANE, P.J., and AHRENS, J., concur.