

# Missouri Court of Appeals

## Southern District

### Division Two

LENA GRIFFIN, and JANIE ELDER,     )
        )
    Plaintiffs-Appellants,     )
        )
vs.        )    Nos. SD33023 & SD33024
        )       CONSOLIDATED
KANDI TECHNOLOGIES     )
CORPORTATION, ZHEJIANG KANDI  )    **Filed: December 31, 2014**
VEHICLE CO., LTD., RHINO'S TRUCK )
ACCESSORIES, and RYAN BROOKS,  )
        )
    Defendants-Respondents.    )

### APPEAL FROM THE CIRCUIT COURT OF RIPLEY COUNTY

The Honorable Michael M. Pritchett, Circuit Judge

### AFFIRMED

This appeal arises from a wrongful death law suit. Two men were killed in a go-kart incident, and their surviving family members sued the manufacturers, distributors, and sellers of the go-kart, alleging various counts of strict liability and negligence. The manufacturers and distributors ultimately obtained a jury verdict in their favor. The families appeal, challenging two pre-trial rulings. The points on appeal are without merit, and the trial court's judgment is affirmed.

### Factual and Procedural Background

On March 2, 2006, Lena Griffin ("Ms. Griffin") and Benjamin Wayne Griffin ("Mr. Griffin") purchased a go-kart. Their friend Jackie Honea ("Mr.

Honea") was present at the time of the purchase. Later that afternoon, the go-kart flipped over while Mr. Griffin was driving, and Mr. Honea was riding as a passenger. According to a highway patrol accident reconstruction report, the incident occurred when the go-kart vaulted off a hump in Mr. Griffin's driveway. When the vehicle landed, the front frame struck the ground first, and both occupants were ejected. The report further explained that at the time of the incident, the vehicle was traveling approximately 34 miles per hour over rough terrain, and neither of the men was wearing his safety belt. Both men received severe head injuries and died as a result of the crash. No one actually witnessed the crash.

Ms. Griffin, her children, and Mr. Honea's mother Janie Elder ("Ms. Elder") (collectively "Plaintiffs") subsequently filed a wrongful death suit. The named defendants included three separate groups involved in the manufacture and sale of the go-kart: (1) the companies responsible for the manufacture of the go-kart—Zhejiang Kandi Investments Group ("Kandi Investments"); Kandi Technologies Corporation ("Kandi Technologies"); and Zhejiang Kandi Vehicles Company, Ltd. ("Kandi Vehicles")—(2) the companies responsible for importing the go-kart—SunL Group, Inc. ("SunL") and Ham Trading, Inc. ("Ham")—and (3) the people and organizations who participated in the ultimate sale of the go-kart to the Griffins—Rhino's Truck Accessories ("Rhino's"); the sole proprietor of Rhino's, Ryan Brooks ("Mr. Brooks"); Supertints Window Tinting ("Supertints"); and the owner of Supertints, Michael Keith Hampton ("Mr. Hampton"). Plaintiffs raised claims of strict liability and negligence against Kandi Investments, Kandi Technologies, Kandi Vehicles, Ham, and SunL. They also

2

alleged Rhino's, Mr. Brooks, Supertints, and Mr. Hampton were negligent for failing to inspect the go-kart and for failing to warn of the go-kart's alleged defects.

Rhino's and Mr. Brooks subsequently sought summary judgment based on the argument that they did not know or have reason to know of the go-kart's alleged defects. The trial court granted Rhino's and Mr. Brooks's motion for summary judgment.

The case then went to trial against the remaining defendants. The jury found against the Plaintiffs and in favor of the defendants, and the trial court entered judgment accordingly. Plaintiffs appeal, challenging the trial court's ruling on Rhino's and Mr. Brooks's motion for summary judgment and the trial court's ruling on a motion to set aside a default judgment entered prior to trial.

### Point I, Point II, and Point III

In their first point and their second point, Plaintiffs argue the trial court erred in granting summary judgment because Rhino's and Mr. Brooks failed to show an absence of a genuine issue of material fact. In their third point, Plaintiffs argue the trial court erred in granting summary judgment because Rhino's and Mr. Brooks failed to prove they were entitled to judgment as a matter of law as there were facts in dispute regarding whether Rhino's and Mr. Brooks (1) sold the go-kart and (2) knew or should have known about the alleged defects of the go-kart. We address these points together.

Appellate review of the trial court's decision regarding a motion for summary judgment is *de novo*. ***ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.***, 854 S.W.2d 371, 376 (Mo. banc 1993). "Facts set forth

3

by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* Furthermore, the reviewing court "will review the record in the light most favorable to the party against whom judgment was entered." *Id.*

"Missouri's Rule 74.04 sets out a procedure for granting summary judgments in cases in which the movant can establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law." *Id.* at 377. Under that rule:

> a 'defending party' may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 381 (emphasis in original).

Here, Plaintiffs sought to recover against Rhino's and Mr. Brooks on a theory of negligent failure to warn and negligent failure to inspect. For that claim, Missouri courts have adopted the test from Section 388 of the Restatement (Second) of Torts. ***Morris v. Shell Oil Co.***, 467 S.W.2d 39, 42 (Mo. 1971). Thus:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

4

(b)    has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c)    fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Id.* Accordingly, Rhino's and Mr. Brooks sought summary judgment stating "Plaintiffs cannot establish that [Rhino's and Mr. Brooks] knew or should have known of the alleged defects of the subject go-kart or that [Rhino's and Mr. Brooks] failed to use ordinary care during the allege[d] sale of the subject go-kart." Thus, the issue in this case is whether there are undisputed facts showing Rhino's and Mr. Brooks did not know or did not have reason to know the go-kart was likely to be dangerous for the use for which it was supplied. The following additional facts relevant to that issue are gleaned from the parties' statements of material uncontroverted facts, viewed in the light most favorable to Plaintiffs as the non-moving party. *See ITT*, 854 S.W.2d at 376.

At the time the Griffins bought the go-kart, Mr. Brooks was the sole proprietor of Rhino's. He leased space to Supertints out of the building where he operated Rhino's, but he was not otherwise affiliated with Supertints. Rhino's and Supertints shared retail space, parking space, and computers, but the companies did not share a cash register. Supertints and Rhino's did not do anything to inform customers whether customers were purchasing a product from Supertints or Rhino's.

Mr. Hampton was the owner of Supertints. Mr. Hampton bought go-karts from SunL for retail sale. Mr. Hampton usually unpackaged and assembled the

5

go-karts. Occasionally his employee Michael Snyder ("Mr. Snyder") would help him complete those tasks.

Mr. Brooks of Rhino's never helped Mr. Hampton un-package a go-kart. Mr. Brooks did not share in the profits from the sale of go-karts. However, Mr. Brooks admitted he had accepted deliveries for Mr. Hampton and had covered for Mr. Hampton when Mr. Hampton was not at work. Additionally, Mei Zhou ("Ms. Zhou"), an employee of SunL, believed Rhino's was one of SunL's customers but no documents reflected any business dealings between SunL and Rhino's.

Mr. Hampton had a back surgery in early 2006 and did not return to work until March 3, 2006. Mr. Snyder was working on March 2, 2006. Mr. Snyder does not remember selling any go-karts. Nevertheless, Mr. Hampton recalled receiving a call from Mr. Snyder on March 2, 2006, informing him a go-kart had been sold.

Ms. Griffin stated she assumed the people they bought the go-kart from worked for Rhino's because the building said Rhino's. The people they spoke with stated go-karts were safer than four-wheelers. Ms. Griffin remembered speaking to a male, but she could not describe the man and could not remember his name. At the time she and Mr. Griffin purchased the go-kart, Ms. Griffin was not aware Supertints existed.

Plaintiffs hired an expert to examine the go-kart.[1]  The expert discovered the castle nut in the lower suspension of the go-kart "was not torqued to specification, and in fact needed to be twisted with fingers."  This problem "would have had an effect on the steering and handling of the go-kart."  Furthermore, "[t]he castle nut and cotter pin could have easily been inspected and tightened to specification prior to the delivery of the go-kart to the Griffin family."

With respect to the dangerous condition of the go-kart, Plaintiffs also submitted a 2000 report titled *Go-Kart Related Injuries and Deaths to Children* ("the injury report").  The injury report stated that between January 1, 1990, and December 31, 1999, 113 children died as a result of go-kart accidents.  The injury report also concluded the major hazards "were collision with a stationary object, collision with a moving vehicle, or loss of stability."

These facts presented in conjunction with the summary judgment motion and response show Plaintiffs, after an adequate period of discovery, will be unable to prove Rhino's and Mr. Brooks had the requisite knowledge.  Knowledge on the part of Rhino's and Mr. Brooks is critical to both the negligent failure to warn and negligent failure to inspect theories Plaintiffs raised in their petitions.

---

[1] The facts related to the expert's examination of the go-kart are taken from Plaintiffs' statement of additional material facts.  These facts are considered because Rhino's and Mr. Brooks did not respond to Plaintiffs' reply in accordance with the procedure set out in Rule 74.04.  When replying to a response to a motion for summary judgment, "[d]enials shall be supported in the manner prescribed by Rule 74.04(c)(2)."  Rule 74.04(c)(3).  Rule 74.04(c)(2) provides that a response must set forth the facts in their original paragraphs and indicate whether each one is admitted or denied.  Rule 74.04(c)(2).  Furthermore, "[a] denial may not rest upon the mere allegations or denials of the party's pleading.  Rather, the response shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial."  Rule 74.04(c)(2).  Where a party does not comply with those requirements, the facts presented by the other party are deemed admitted.  ***Central Trust and Inv. Co. v. Signalpoint Asset Mgmt., LLC***, 422 S.W.3d 312, 320 (Mo. banc 2014).  Here, while Rhino's and Mr. Brooks replied to Plaintiffs' response, their denials of the facts related to the expert's examination of the go-kart did not include specific references to the discovery.  Thus, those facts are deemed admitted.  All rule references are to Missouri Court Rules (2014).

As stated above, the first of the three elements a plaintiff must prove in a negligent failure to warn case is that the seller knew or had "reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied[.]" *Malone v. Schapun, Inc.*, 965 S.W.2d 177, 184 (Mo. App. E.D. 1997). Moreover:

> [a] seller of a product, who neither knows [n]or has reason to know that the product is dangerous, is not liable in a negligence action for harm caused by the product's dangerous condition because of the seller's failure to discover the danger by an inspection or test of the product before selling it.

*Id.* at 185-86. Thus, if Plaintiffs, after an adequate period of discovery, will be unable to produce facts showing Rhino's and Mr. Brooks had reason to know the go-kart was dangerous or was likely to be dangerous, Rhino's and Mr. Brooks have shown a right to judgment as a matter of law. *See ITT*, 854 S.W.2d at 381 (noting a defending party may show a right to judgment as a matter of law by establishing "that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements.") (emphasis in original).

The mere act of selling a product is not sufficient to show the seller knew or had reason to know the product was likely to be dangerous. *See Malone*, 965 S.W.2d at 185. The phrase "reason to know" has been defined as being satisfied when "the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists." *Id.* Thus, where a seller in support of a motion for summary

8

judgment provides a sworn statement that he or she lacked knowledge of the dangerous condition, and the plaintiff responds by merely adducing evidence that the sellers were responsible for ordering the stock and placing it in the store, the plaintiff has not produced sufficient facts to defeat the motion for summary judgment. *Id.*

In the present case, Rhino's and Mr. Brooks demonstrated facts showing Plaintiffs would not be able to show Rhino's and Mr. Brooks had the requisite knowledge by presenting Mr. Brooks's affidavit in support of their statement of uncontroverted material facts. In that affidavit, Mr. Brooks stated he "was not involved with the ordering, preparing, assembling or delivering of said go-kart." He also said he did not receive any information regarding a defect in the go-kart. Thus, the burden shifted to Plaintiffs to show a dispute regarding the facts which bore upon Mr. Brooks's knowledge. *See ITT*, 854 S.W.2d at 381. To do so, Plaintiffs made a two-pronged attack.

First, and primarily, Plaintiffs attempted to show Mr. Brooks was involved in the sale of the go-kart. In support of this attack, they adduced evidence (1) that Ms. Griffin believed Rhino's sold the go-kart; (2) that Mr. Snyder did not remember selling the go-kart; and (3) a manager of Rhino's admitted the sale when speaking to a highway patrolman shortly after the accident. This attack is unavailing. These facts do not show knowledge of or reason to know the go-kart was likely to be dangerous. Rather these facts simply show a question of fact as to whether Rhino's and Mr. Brooks participated in the sale of the go-kart. However, as discussed above, the mere fact that Mr. Brooks participated in the sale would not require the finding that Mr. Brooks had the requisite knowledge.

9

*See **Malone***, 965 S.W.2d at 185. Thus, those facts, even if they are in dispute, are not material.

Plaintiffs' second attack involved two facts: the seller's representation to the Griffins that go-karts were safer than other four wheelers and the injury report. Neither of these two facts demonstrates Rhino's or Mr. Brooks had reason to know of any defect in the go-kart.

Ms. Griffin's recollection of the assurance given by the salesperson does not demonstrate a reason to know the go-kart was likely to be dangerous. Stating that a go-kart is safer than other vehicles does not imply possession of knowledge regarding specific information that would lead a person of reasonable intelligence to infer a defect existed. Furthermore, even if Mr. Brooks was the person who made that representation and even if Mr. Brooks was involved in the sale, the undisputed facts still show it was not an ordinary part of his business. He did not order the go-kart or help assemble it. Rather, he was substituting for Mr. Hampton because of Mr. Hampton's surgery. These facts show Rhino's and Mr. Brooks had no specific information regarding the go-kart.

Furthermore, the injury report does not create a genuine issue of material fact because it is simply not relevant. Scientific knowledge as shown by authoritative publications cannot be used to show knowledge on the part of a party without proof that the party had actual knowledge of the publication. ***Ball v. Burlington Northern R. Co.***, 672 S.W.2d 358, 362 (Mo. App. E.D. 1984). Here, no facts were presented showing Mr. Brooks had actual knowledge of the report. The mere fact that the report was in the public domain is simply not

10

sufficient to show Mr. Brooks, a person who did not regularly deal in the sale of go-karts, was aware of it.

The facts Plaintiffs presented failed to create a genuine issue of material fact with respect to Rhino's and Mr. Brooks's knowledge of any alleged dangerous condition in the go-kart. Consequently, the trial court did not err in granting summary judgment to Rhino's and Mr. Brooks. Plaintiffs' first three points are denied.

## Point IV

In their final point, Plaintiffs argue the trial court erred in granting the motion to set aside the default judgment that was originally entered against Kandi Investments. We disagree.

The following additional facts are relevant to the resolution of this claim. Plaintiffs' first petition in this case was filed on February 27, 2009. Service on Kandi Vehicles was obtained by service on Ms. Zhou. The docket sheets reflect that the summons was delivered to Ham, Kandi Vehicles, Kandi Investments, and SunL on April 15, 2009. On March 16, 2010, Plaintiffs filed a motion for default judgment. The trial court held a hearing on the motion and entered default judgments on March 19, 2010. These judgments purported to award $20 million from Kandi Investments to Ms. Griffin and her children and $20 million from Kandi Investments to Ms. Elder.

On June 9, 2010, Kandi Investments filed a motion to set aside the default judgment. Later, counsel filed a motion to substitute Kandi Vehicles for Kandi Investments. In support, counsel presented an affidavit showing that Kandi Investments is a holding company and that Kandi Vehicles is the company who

11

allegedly built the go-kart. The trial court granted the motion to substitute. In its subsequently filed amended motion to set aside the default judgment, Kandi Vehicles claimed service was inadequate because Ms. Zhou was not the registered agent for Kandi Vehicles. In support of the motion, Kandi Vehicles filed an affidavit made by Xiaoming Hu ("Mr. Hu"). In his affidavit, Mr. Hu stated he was the founder of Kandi Vehicles and SunL was a former distributor for Kandi Vehicles. He further stated Ms. Zhou had never been an officer, partner, or managing or general agent for Kandi Vehicles. According to the affidavit, Ms. Zhou's office was not a place of business for Kandi Vehicles, and Ms. Zhou did not inform Kandi Vehicles of the documents she received. Under these facts, Kandi Vehicles was never properly served, so the trial court never acquired personal jurisdiction and the default judgment was a nullity.

"[W]hether a default judgment should be vacated because it is void is a question of law that we review *de novo*." ***O'Hare v. Permenter***, 113 S.W.3d 287, 289 (Mo. App. E.D. 2003). In the interest of finality, the concept of a void judgment is narrowly limited. ***Ground Freight Expeditors, LLC v. Binder***, 407 S.W.3d 138, 141 (Mo. App. W.D. 2013). "A judgment is void under Rule 74.06(b)(4) only if the circuit court that rendered it (1) lacked subject matter jurisdiction; (2) lacked personal jurisdiction; or (3) entered the judgment in a manner that violated due process." ***Id.*** at 141-42 (quoting ***Goins v. Goins***, 406 S.W.3d 886, 891-92 (Mo. banc 2013)). Here, the circuit court lacked personal jurisdiction.[2]

---

[2] Although Kandi Vehicles disputes Plaintiffs' use of the term jurisdictional, the use of that term is appropriate in this case. ***J.C.W. ex rel. Webb v. Wyciskalla***, 275 S.W.3d 249 (Mo. banc 2009), which clarified the law regarding jurisdictional arguments in Missouri courts, was

12

"Service of process is a prerequisite to the exercise of personal jurisdiction over a defendant." ***Cook v. Polineni***, 967 S.W.2d 687, 690 (Mo. App. E.D. 1998). "[U]nless a defendant is served with process, or summoned, in a manner and form authorized by statute, the court is without authority to proceed." ***Finnigan v. KNG Invs., Inc.***, 158 S.W.3d 808, 810 (Mo. App. S.D. 2005) (quoting ***State ex rel. Illinois Farmers Ins. Co. v. Gallagher***, 811 S.W.2d 353, 354 (Mo. banc 1991)). "Where the statutorily prescribed requirements for process and the manner of service are not met, the court in which the action is pending is without power to adjudicate." ***Id.***

Kandi Vehicles was a Chinese corporation, so service of process was governed by Rule 54.13(b)(3). *See* Rule 54.14(b). That rule provides that service may be made upon a foreign corporation:

> by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process.

Rule 54.13(b)(3).

Here, the purported service on Kandi Vehicles was accomplished by delivering the documents to Ms. Zhou at her office in Texas. However, Ms. Zhou was not an officer, partner, or managing or general agent of Kandi Vehicles. Furthermore, Kandi Vehicles did not maintain an office at Ms. Zhou's office, so service on Ms. Zhou would not satisfy the alternative method of service by

---

primarily concerned with subject matter jurisdiction. *See **id.*** at 253. That case did not alter the rules regarding personal jurisdiction which are rooted in concepts related to due process. *See **id.***

13

delivering copies to any business office of the defendant. Kandi Vehicles was never properly served prior to the entry of the default judgment.

"When a court enters a judgment when no valid personal jurisdiction has been obtained over the defendant, the judgment is void." *Maddox v. State Auto. Mut. Ins. Co.*, 356 S.W.3d 231, 234 (Mo. App. E.D. 2011). Furthermore, "[a] default judgment, being void due to lack of jurisdiction, remains void forever, and any kind of proceeding to cancel it is proper." *Bueneman v. Zykan*, 52 S.W.3d 49, 58 (Mo. App. E.D. 2001). The trial court did not err in granting the motion to set aside the default judgment.

In their point on appeal, Plaintiffs argue there was no jurisdiction to do anything in the case after entering the default judgment because the docket entry setting aside the default judgment was not a final judgment. This argument misses the mark. Although ordinarily, a final judgment would be needed to set aside a default judgment, the same result does not apply where the default judgment was void for lack of personal jurisdiction. Because the default judgment was void, it was as if it never existed.

Plaintiffs reliance on *Lake Osage Condominium Ass'n, Inc. v. Prewitt*, 179 S.W.3d 331 (Mo. App. S.D. 2005), is misplaced because it does not take into account the critical fact that Kandi Vehicles was not properly served prior to the entry of the default judgment. It is true that *Lake Osage* holds that a final judgment is necessary to effectively set aside a default judgment. However, in that case, the default judgment was not void. Rather, the defendant in that case had been properly served, and the default judgment was set aside on other grounds. *Id.* at 333-34. Thus, unlike in the present case, the trial court

14

had the power to enter the original default judgment. Here, the original default judgment was void.

The trial court did not err in setting aside the default judgment because the default judgment was void for lack of personal jurisdiction. Plaintiffs' final point is denied.

## Decision

The trial court's judgment is affirmed.


MARY W. SHEFFIELD, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

DON E. BURRELL, J. – CONCURS

15